Filed 9/24/25  In re Steven T. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re Steven T., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>Steven T.,<br><br>　　　Defendant and Appellant. | A171002<br><br>(Contra Costa County Super. Ct. No. J23-00295) |

In January 2024, after then 16-year-old Steven T. pled no contest to kidnapping (Pen. Code, § 207), with an enhancement for infliction of great bodily injury (Pen. Code, § 12022.7, subd. (a)), the juvenile court adjudged him a ward of the court and committed him under Welfare and Institutions Code[1] section 875, to the Briones Youth Academy (BYA), a secure youth treatment facility, with a baseline term of confinement of five years.  This court affirmed the disposition in a prior appeal. (*In re Steven T.* (Feb. 20, 2025, A169884) [nonpub. opn].)

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

In July 2024, the juvenile court conducted Steven's first six-month review hearing as required by section 875, subdivision (e). In the present appeal, Steven contends the trial court abused its discretion by denying his request for a reduction in his baseline term of confinement. We find no error and affirm.

## BACKGROUND

In our prior opinion, we described Steven's offense as follows: "On April 25, 2023, then 15-year-old Steven, told a 14-year-old friend that he had a 'surprise' for her in a school custodial shed. After directing the victim to enter before him, Steven donned a red 'scream' devil mask and latex gloves and armed himself with a knife. When she turned around, Steven attacked her, stabbing her in the face, neck and hand with the knife. As a result of the attack, the victim suffered an approximately 2.5-centimeter-wide laceration to her cheek, including a deep muscle laceration, an approximately 2-centimeter neck laceration going into the muscle, and severe damage to her right hand. [¶] Steven attempted to flee when school staff interrupted the attack but was tackled and restrained until police arrived to arrest him. Following his arrest, officers searched his backpack and found a notebook with violent drawings in it. During a subsequent search of Steven's room, officers found a 'Scream' movie mask, a small canister of pepper spray, and a Halloween-style skeleton mask. In a false bottom drawer with a bin of socks, officers discovered two serrated fixed blade knives, a ball peen hammer and a black journal. The journal had a 'kill list' that listed three students' names and an

2

entry where he talked about wanting to 'kill everyone around [him]' by bringing a chainsaw to school. The journal also talked about Steven's intrusive thoughts, about signs from God, and how he felt lethal, and he did not like that feeling." (*In re Steven T.*, *supra*, A169884.)

We also noted by way of background that Steven was diagnosed with autism spectrum disorder, attention deficit hyperactivity disorder, sensory integration disorder, and possible obsessive compulsive disorder; that he had suffered a brain injury at birth and was developmentally delayed as a result; and that " 'pervasive and traumatic bullying has been a theme throughout Steven's life' " and " 'has tremendously impacted his development and decision making.' " (*In re Steven T., supra,* A169884.) It was also undisputed in the prior appeal that Steven had significant mental health issues at the time of the offenses; his mental health stability was achieved only after six months of treatment in a highly structured environment; and left untreated, Steven posed a very serious risk to the community. (*In re Steven T., supra,* A169884.)

At his disposition hearing, the court calculated that Steven's maximum term of confinement[2] was eight years and set

---

[2] Under section 875, subdivision (c)(1), a ward's maximum term of confinement "represent[s] the longest term of confinement in a facility that the ward may serve."

his baseline term of confinement[3] at five years.[4]

In advance of the six-month review hearing, the probation department submitted a report recommending a reduction in Steven's baseline term of confinement of three months and eight days. The report reads, "On 7/3/24, Steven [] appeared before the BYA Review Board . . . for baseline reduction recommendation. The BYA Review Board evaluated Steven's behavior and development in consideration of the monthly matrix, essay, and interview to determine the baseline reduction recommendation. [¶] Steven appears to be taking his rehabilitation seriously. He has begun his individualized rehabilitation plan, including Thinking for Change (T4C). He attends school regularly, earning A's and B's (3.85 GPA) while also attending college courses, interacts with all pro-socially, is participating in Beekeeping, and is actively attending therapy. [¶] During the BYA Review Board, Steven appeared very open and sincere in his discussions. Among many topics discussed, Steven communicated long-term goals of paying his debt to society by serving in the military as he felt that the closer to danger he was, the closer he was to repaying his debt to society. He was encouraged to continue to research his aspirations, as well exploring them with his

_____

[3] Section 875, subdivision (b)(1) defines a ward's baseline term of confinement as "the time in custody necessary to meet the developmental and treatment needs of the ward and to prepare the ward for discharge to a period of probation supervision in the community."

[4] Steven's request that this court take judicial notice of the transcripts of the disposition hearing contained in the record of his prior appeal is granted.

4

therapist. [¶] Steven's development is appropriate at this juncture in his program. His behavior has met expectations, as exemplified by his consistent 'gold status' since being committed to BYA, in addition to all the aforementioned, and he has had no behavior concerns to note. [¶] On 5/1/24, Probation amended the [Secure Youth Treatment Facility] Baseline Modification Recommendation Criteria to align with the structure of the BYA program, placing an emphasis on treatment, development and reentry. The goal of this tiered approach is to allow for more successful reintegration into the community. [¶] Steven participated in the original [Secure Youth Treatment Facility] Baseline Modification Recommendation Criteria for February through April; He earned 28 days for February and March as he was not in treatment classes, and 30 days in April as he began treatment. For the months of May and June, Steven participated in the amended SYTF Baseline Modification Recommendation Criteria, earning total of six days each month."

At the hearing, Steven's counsel requested a six-month reduction in his baseline. Counsel noted that after Steven was committed to the BYA, staff assessed his likelihood of recidivism as "low risk overall." Counsel also argued that Steven had taken advantage of every program offered to him and that his behavior throughout has been "exemplary." Steven also made a statement to the court expressing his remorse, his understanding about the wrongfulness of his actions, and his commitment to changing himself for the better.

5

The prosecutor opposed any reduction in Steven's baseline term. The prosecutor emphasized that Steven had only received the treatment identified in his individual rehabilitation plan for two months, which the prosecutor argued was insufficient time for Steven to demonstrate that he needed less rehabilitation than the court ordered at the disposition hearing just six months prior.

At the conclusion of the hearing, the court recognized the "outstanding progress" that Steven had made to date, including "being medication compliant, being hungry for more rehabilitation, looking for opportunities to demonstrate your remorse." Nonetheless, the court declined to reduce Steven's baseline term of confinement. The court explained: "The Court is mindful that the focus of today's hearing and future hearings of this type is not necessarily the offense conduct, but instead it is supposed to be focused on the progress. But the offense conduct doesn't exist in a vacuum. Obviously it drove the analysis that set the baseline, to begin with. It is not something that is to be completely disregarded at this point. I think it sets the practical baseline—setting aside the legal baseline that's already been set, it sets a practical baseline for how to view the case—the level of rehabilitation dosage, the frequency of that dosage, and every six months the Court needs to reevaluate how that is progressing. And I think taking this record as a whole, I tend to agree with the Prosecution, based on the record that's before the Court and the analysis and set forth in [*In re Tony R.* (2023) 98 Cal.App.5th 395 (*Tony R.*)] that it is not unreasonable at this point to want more data before the Court decides to reduce, and if so, by how

6

much the baseline in this case.  [¶]  That's not to take away from or impune [sic] or impeach the progress that Steven has made because Steven, I think, you have done—you have gone above and beyond what I would expect anyone in your position to do on this record.  But as I have indicated against the backdrop of the record in this case, I need more data.  And we have time to gather that data.  This is not the only opportunity to have the Court consider a reduction in a baseline."

## DISCUSSION

Section 875 requires the juvenile court, in committing a ward to a secure youth treatment facility, to set a "baseline term of confinement" that "shall represent the time in custody necessary to meet the developmental and treatment needs of the ward and to prepare the ward for discharge to a period of probation supervision in the community."  (§ 875, subd. (b)(1).)  Under California Rules of Court, rule 5.806, in setting the baseline term of confinement, the juvenile court must start with the range designated for the ward's offense—in this case four to seven years—and then select the baseline term based on the individual facts and circumstances of the case.  (Cal. Rules of Court, rule 5.806, subds. (b),(d).)  The rule lists the following factors for consideration by the court:  (1) The circumstances and gravity of the commitment offense; (2) The youth's prior history in the juvenile justice system; (3) The confinement time considered reasonable and necessary to achieve the rehabilitation of the youth; and (4) The youth's developmental history.  (Cal. Rules of Court, rule 5.806, subd. (b).)

7

Section 875 also requires the development of an "individual rehabilitation plan" (IRP) for the ward, which must identify the ward's needs and describe the programming, treatment, and education to be provided in relation to the identified needs. (§ 875, subd. (d)(2).) The IRP must be submitted to the court for approval within 30 days of the ward's commitment. (§ 875, subd. (d)(1).)

Under subdivision (e)(1) of section 875, the juvenile court must hold a progress hearing "not less frequently than once every six months" to "evaluate the ward's progress in relation to the rehabilitation plan" and to "determine whether the baseline term of confinement is to be modified." At the review hearing, "[t]he court shall consider the recommendations of counsel, the probation department and any behavioral, educational, or other specialists having information relevant to the ward's progress. At the conclusion of each review hearing, upon making a finding on the record, the court may order that the ward remain in custody for the remainder of the baseline term or may order that the ward's baseline term or previously modified baseline term be modified downward by a reduction of confinement time not to exceed six months for each review hearing. The court may additionally order that the ward be assigned to a less restrictive program, as provided in subdivision (f)." (§ 875, subd. (e)(1).) Under California Rules of Court, rule 5.806, subdivision (c), "[t]o provide an incentive for each youth to engage productively with the individual rehabilitation plan approved by the court under section 875(b)(1), each probation department operating a secure

youth treatment facility must implement a system to track the positive behavior of the youth in a regular and systematic way and report to the court at every progress hearing on the youth's positive behavior, including a recommendation to the court on any downward adjustment that should be made to the baseline term in recognition of the youth's positive behavior and development."

We review the trial court's decision at the review hearing for an abuse of discretion. (*Tony R.*, *supra*, 98 Cal.App.5th at p. 414.) "The abuse of discretion standard of review 'asks in substance whether the ruling in question "falls outside the bounds of reason" under the applicable law and the relevant facts.' [Citation.] We ' " 'indulge all reasonable inferences to support the decision of the juvenile court and will not disturb its findings when there is substantial evidence to support them.' " ' " (*Ibid.*)

Steven contends that the court abused its discretion in denying his request for a baseline reduction because "[t]he two factors the legislature directed the court to consider—Steven's progress in relation to the rehabilitation plan considering the programming available to him and probation's recommendation concerning Steven's positive behavior—both support reducing Steven's baseline term." He argues that the prosecution's argument, adopted by the court, that two months was insufficient time for Steven to demonstrate that he needed less rehabilitation, "ignores that Steven participated in services for approximately fifteen months prior to his hearing, and that his mental health,

the primary cause of his criminal behavior, had stabilized." He suggests that "[t]he evidence demonstrates that when provided suitable treatment and programs—including cognitive behavioral therapy and consistent medication delivery supervised by a nurse practitioner—it was reasonably likely that Steven could be prepared for discharge at a sooner date than his five-year commitment."

Steven's arguments that his positive behavior and engagement in services required a reduction in the baseline term and that the court erred by considering only his progress since his commitment to the BYA rather than his progress over the full fifteen months prior to the hearing were largely addressed in *Tony R., supra,* 98 Cal.App.5th 395.

In *Tony R.,* the juvenile court, as in this case, acknowledged that Tony had been behaving well and was consistently engaging in his program, but declined to reduce his baseline at his first review hearing on the ground that "not enough time ha[d] passed by to say that the risks have diminished." (*Tony R., supra,* 98 Cal.App.5th at pp. 405, 409–410.) The court rejected Tony's argument that a ward who performs well on his rehabilitation plan is necessarily entitled to a reduction in his baseline term of confinement. (*Id.* at p. 410.) The court explained that while the ward's good behavior and compliance with an individual rehabilitation plan are among the factors the court should consider at a review hearing, positive performance alone is "too narrow a measure of a ward's progress" under section 875. (*Tony R.,* at pp. 405, 409–410.) The court added: "Section 875

10

directs the court to decide whether to order a reduction after 'evaluat[ing] the ward's progress in relation to the rehabilitation plan,' including consideration of 'the recommendations of counsel, the probation department and any behavioral, educational, or other specialists having information relevant to the ward's progress.' [Citation.]  This directive implies a measure of progress more comprehensive than just whether the ward is behaving well and participating in the programming called for in the rehabilitation plan.  Commitment to a secure youth treatment facility is reserved for wards who have committed the most serious offenses, for whom such commitment is necessary to achieve the goals of rehabilitation and community safety.  [Citation.]  Compliance with the rehabilitation plan is undeniably laudable, but it is not necessarily in itself the full measure of how much progress a ward has made in terms of specific behavioral and psychological issues; whether the progress is sufficient to be confident that a reduced baseline term will leave sufficient time for rehabilitation and successful reentry will depend on the particular ward and how far the ward has to go.  Thus, we cannot agree . . . that a ward's good behavior and full participation in the rehabilitation plan *necessarily* requires a reduction without regard to other potentially relevant considerations, including how much the minor has progressed with respect to individual treatment needs and programming goals and how long a time period is expected to be necessary for the ward's full rehabilitation and protection of the public." (*Ibid*.)

In *Tony R.,* as here, the prosecutor argued and the court agreed that there had not been sufficient time and progress to justify a reduction.  (*Tony R., supra,* 98 Cal.App.5th at pp. 404, 412.)  On appeal, the court rejected the argument that the insufficient passage of time was not a proper factor for the court to consider.  (*Id.* at p. 412.)  The court explained, "This argument is necessarily premised on acceptance of Tony's view that a six-month reduction is *required* as long as a ward complies with the case plan.  We have rejected Tony's interpretation of section 875 as creating an entitlement to a six-month reduction as well as his view of the measure of progress requiring a reduction.  Progress 'in relation to the rehabilitation plan' [citation], as earlier discussed, appropriately implies consideration of the objectives and goals of the plan as well as compliance with its elements." (*Tony R.,* at p. 412.)

Here, the juvenile court acknowledged that it was "mindful of the counsel's different computations of the time frame and how they're computing" how long Steven had been engaged in treatment, but ultimately agreed with the prosecutor that it needed to see more "data" regarding Steven's progress in the BYA program before it could reduce his baseline.  The court was not required to consider Steven's progress in treatment prior to his BYA commitment at issue at the six-month review hearing.  The record reflects that Steven's progress while in juvenile hall was taken into consideration when the court determined his baseline

12

term at the disposition hearing.[5]  At that time, the court determined that Steven would need five additional years to complete his rehabilitation and prepare for discharge.  At the review hearing, the court reasonably considered, as directed by section 875, Steven's progress under his IRP and concluded that the baseline previously selected was still appropriate.  While there is no dispute that Steven was performing well by all standards, it was within the court's discretion to conclude that a reduction of Steven's baseline term this early in his period of confinement would not serve his rehabilitative needs and public safety concerns.  (*Tony R.*, *supra*, 98 Cal.App.5th at p. 414.)

Steven's attempts to distinguish *Tony R.* are not persuasive.  Steven correctly notes that in *Tony R.*, while the court observed that Tony was "by all accounts doing extremely well," the probation department had not recommended a reduction, Tony had been in two fights while in the program and

---

[5] At the disposition hearing, Steven's counsel requested a baseline term of three years.  He argued that in setting the baseline term of confinement, the court is instructed to consider the time and treatment already received in juvenile hall and that "for youth who behave well, it almost seems to be that the Rules of Court direct that the baseline be set at less than the baseline max with that information in mind."  In explaining the basis for the selection of the five year baseline term, the court stated, "When I look at the subfactors, which include the amount of time that Steven has already spent in custody for the current offense and the progress that he's made in programming and development, the record as it exists today that appears to be a mitigating subfactor in that I think Steven has made progress, namely, in the area of recognizing and treating his mental health issues that he had that existed at the time of the offense."

he had been assessed to have a "high risk" of recidivism. (*Tony R.*, *supra*, 98 Cal.App.5th at pp. 404, 414, 415.) In contrast, here the probation department recommended a reduction in Steven's baseline term and assessed Steven as having a low risk of recidivism. These facts, however, do not necessarily establish an abuse of discretion. It remains undisputed that Steven had significant treatment and service needs that he had not yet completed and had committed an extremely serious offense with grave consequences for the victim. While his risk of reoffending was low when under supervised treatment by medical professionals, he posed a significant danger to the community if his treatment lapsed. Under these circumstances, we cannot conclude that the court abused its discretion by concluding that additional progress was necessary before his baseline term of confinement could be reduced.

## DISPOSITION

The six-month review order is affirmed.

GOLDMAN, J.

WE CONCUR:

BROWN, P. J.
STREETER, J.

14